IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| | § | CASE NO: 19-33401 |
| LEGACY RESERVES | § | |
| OPERATING LP, | § | |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |
| | § | CHAPTER 11 |

## MEMORANDUM OPINION

Urban Fund III, LP and Urban Oil and Gas Partners C-1, LP move to reopen the Legacy Reserves Operating LP bankruptcy case. Because neither Urban entity has Constitutional standing, the requested relief is denied.

## BACKGROUND

On December 28, 2022, the two Urban entities moved to reopen Legacy Reserves Operating LP's bankruptcy case. Legacy's bankruptcy case was closed on December 28, 2020. ECF No. 593. The stated purpose of the reopening was to obtain this Court's interpretation and enforcement of Legacy's chapter 11 Plan and this Court's Confirmation Order. ECF No. 634.

The Urban entities seek an order that would relieve the Urban entities of certain alleged indemnity obligations related to ten Louisiana lawsuits. These alleged indemnity obligations flow through a series of contractual successor parties including Legacy and two related entities referenced as the Blackbeard entities. Marathon Oil Company is the entity seeking indemnity from the Urban entities.

The Court conducted an initial hearing on the motion on February 23, 2023. At the hearing, the Court requested briefing on whether the Urban entities have standing under Article III of the U.S. Constitution's Case or Controversy Clause. ECF No. 654. The Court specified that the

briefing was to cover at least two issues.  First, were the Urban entities asserting their own rights or the rights of another entity?  Second, did the Urban entities assert a controversy with Legacy?  ECF No. 654.  On March 17, 2023, Legacy and Blackbeard filed a joinder to part of Urban's motion.  ECF No. 658 at 1.  The joinder is only as to the interpretation of the Confirmation Order, not as to the requests to reopen the case or modify the Confirmation Order.  ECF No. 658 at 1.  On March 17, 2023, Urban filed its brief on standing.  ECF No. 659.  On March 31, 2023, Marathon Oil Company filed its amended brief on standing in response to Urban's arguments.  ECF No. 662.

Urban does not have standing under Article III of the U.S. Constitution.

## I.   FACTUAL BACKGROUND

Legacy and several of its affiliates filed for chapter 11 bankruptcy on June 18, 2019.  The affiliated cases were jointly administered under the lead case of Legacy Reserves Inc., Case No. 19-33395.  The Court closed the jointly administered chapter 11 case pursuant to § 350(a) of the Bankruptcy Code on December 28, 2020.  ECF No. 593.

Legacy's bankruptcy Schedule G lists executory contracts, with the disclaimer that "[l]isting a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract . . . ."  Case No. 19-33395, ECF No. 228 at 12.  Two of the items under Schedule G, items 2.19405 and 2.19407, reference purchase and sale agreements (PSAs) with Marathon Oil Company and its affiliate Marathon Oil (East Texas) LP (collectively "Marathon"), each dated July 16, 2016.  Case No. 19-33395, ECF No. 228 at 3487.

Those PSAs pertained to certain oil and gas properties located in Louisiana, which later became the subject of the Louisiana lawsuits.  Those suits gave rise to indemnity requests flowing from Marathon down to Urban.  The indemnity requests gave rise to Urban's motion.

The history of the property transfers is helpful to understanding this dispute. Marathon sold certain oil and gas properties to Legacy on July 16, 2015. ECF No. 662 at 1. Legacy agreed to indemnify Marathon for "all obligations and liabilities, known or unknown, with respect to the Assets, regardless of whether such obligations or liabilities arose prior to, on, or after the Effective Date . . . ." ECF No. 659-1 at 77. About a month later, Legacy transferred the properties to a subsidiary. The properties were then sold to Blackbeard on August 29, 2015. The agreements with Blackbeard included similar indemnity provisions. ECF Nos. 662 at 2 & 634-1 at 1. On August 10, 2018, Blackbeard sold the properties to Urban. Those sales agreements also included indemnity provisions. ECF No. 662 at 2. Those indemnity provisions ran from Urban to Blackbeard.

Marathon, the original owner of the properties, is now a defendant in ten lawsuits filed in Louisiana related to the properties that were ultimately sold to Urban. ECF No. 662 at 5. Two of those lawsuits existed when Legacy filed for chapter 11, while eight arose after Legacy's Plan was confirmed on December 11, 2019. ECF No. 662 at 5; Case No. 19-33395, ECF No. 928.

There is a dispute as to whether Legacy's confirmed plan included an assumption of its indemnity obligations to Marathon. ECF No. 654. Marathon says that the plan included an assumption; Urban says that it did not. *Id.*

On August 16, 2022, Marathon tendered a demand for defense and indemnity in the lawsuits upon Legacy pursuant to their PSA, which Legacy accepted. ECF No. 662 at 5. Then, Legacy tendered a demand for defense and indemnity upon Blackbeard, which Blackbeard accepted. ECF No. 662 at 5. When Blackbeard, in turn, tendered its own demand for defense and indemnity upon Urban, Urban filed a state court suit on October 3, 2022. The lawsuit named Blackbeard as the defendant, seeking a declaratory judgment as to Urban's obligations under its PSA with Blackbeard. That lawsuit is pending. ECF No. 662 at 6; *see* Compl. *Urban Fund II LP, et al. v. Blackbeard Operating, Inc.*,

No. 017-337372-22 (325th Dist. Ct., Tarrant County, Tex.).    On December 28, 2022, Urban filed this motion.  ECF No. 634.

## II.   PROCEDURAL BACKGROUND

Urban argues in its motion that Marathon is tendering a previously-discharged demand for defense and indemnity upon Legacy, through Blackbeard, and ultimately upon Urban.  *See* ECF No. 634.  The reason the demand was discharged, Urban argues, is because the obligation was rejected under Legacy's confirmed plan.  Urban's theory is that the indemnity obligation was rejected because it was not expressly assumed.  *See* ECF No. 634.

The Court notes that a discharge of a debt does not eliminate the debt.  *In re Edgeworth,* 993 F.2d 51, 53 (5th Cir. 1993).  Even if the discharge applied, it would have only eliminated Legacy's personal liability on the debt.  *Id.*

Marathon responds that the obligations were not discharged because they were assumed.  *See* ECF No. 640.  Marathon advances several arguments.  First, the obligations were listed in Schedule G as executory contracts.  Second, Legacy sent Marathon a notice of assumption of their PSA as an executory contract to be assumed under the Plan.  Third, the Plan expressly provides that "[o]n the Effective Date, . . . all Executory Contracts or Unexpired Leases not otherwise assumed or rejected will be deemed assumed . . ." Case No. 19-33395, ECF No. 498 at 48.  Marathon also challenges Urban's standing to bring this motion in the first place.  ECF No. 630 at 8.

## STANDING

Article III, Section 2 of the United States Constitution contains the Case or Controversy Clause.

> The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority;—to all cases affecting ambassadors,

other public ministers and consuls;—to all cases of admiralty and maritime jurisdiction;—to controversies to which the United States shall be a party;—to controversies between two or more states;—between a state and citizens of another state;—between citizens of different states;—between citizens of the same state claiming lands under grants of different states, and between a state, or the citizens thereof, and foreign states, citizens or subjects.

U.S. Const. art. III.

"Under federal law, standing is also an aspect of the Article III limitation of the judicial power to 'cases' and 'controversies.'" *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 444 (Tex. 1993) (citing *Sierra Club v. Morton*, 405 U.S. 727, 731 (1972)). "[T]he gist of the question of standing" is whether the litigants have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions[.]" *Baker v. Carr,* 369 U.S. 186, 204 (1962). "The standing doctrine defines and limits the role of the judiciary and is a threshold inquiry to adjudication." *In re Cyrus II P'ship,* 358 B.R. 311, 315 (Bankr. S.D. Tex. 2007) (citing *Warth v. Seldin*, 422 U.S. 490, 517–18 (1975)).

## LEGAL STANDARD

There are three elements to Article III's standing requirement. *In re Cyrus II P'ship,* 358 B.R. at 315. First, a plaintiff must show it has suffered an "injury in fact" that is (i) concrete and particularized, and (ii) actual or imminent, rather than conjectural or hypothetical. *Id.* Second, the injury must be fairly traceable to the challenged action of the defendant. *Id.* Third, the injury must be likely, as opposed to merely speculative, redressable by a favorable decision. *Id.* Urban, "as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Urban must show that it has an actual controversy with Legacy so "as to assure that concrete adverseness . . . upon which the court so largely depends[.]" *Baker,* 369 U.S. at 204.

## DISCUSSION

### I.   INJURY IN FACT

As to the first element—injury in fact—Urban alleges that it suffered an injury in fact when Marathon violated the Plan injunction. Urban alleges that the violation forced Urban to bring this costly motion. ECF No. 659 at 18.  Urban also alleges injuries "to the extent Marathon's and Legacy's delay in fully adjudicating their rights and obligations in respect of the Louisiana Lawsuits and the Chapter 11 Case have impeded Urban's ability to present a fulsome defense in any proceeding Urban has been called to defend as an indemnifying party."  ECF No. 659 at 18.  Urban cites the declaration of its General Counsel, who claims the inclusion of Marathon in Urban's defense efforts would increase Urban's costs, among other reasons for increased injury.  ECF No. 659-1 at 6.  Urban's General Counsel claims that Urban has incurred, to date, over $800,000 in legal fees and expenses in defense of the Louisiana lawsuits and that its potential exposure is in the tens of millions of dollars.  ECF No. 659-1 at 5–7.

As the movant, Urban bears the burden of persuading the Court that it has standing.  An injury in fact must be (i) concrete and particularized, and (ii) actual or imminent. *In re Cyrus II P'ship,* 358 B.R. at 315.  As to Urban's first argument, that being forced to bring a motion suffices as an injury for standing purposes, the Court is unpersuaded.  Urban was not forced to file this motion.  Alleging that the filing of a motion creates a basis for standing fails to meet the injury in fact requirement.

Urban's second argument regarding legal expenses and potential exposure relies on an assumption that Urban's obligation to indemnify Marathon was eliminated by Legacy's bankruptcy discharge.  The discharge of a debt does not eliminate the debt, it just eliminates the

debtor's personal liability on the debt. *In re Edgeworth,* 993 F.2d 51 (5th Cir. 1993). "To prevent windfall absolution, tort claimants have been allowed to pursue their prepetition claims against discharged debtors." *In re Tailored Brands, Inc.,* No. 20-33900, 2021 WL 2021472, at *3 (Bankr. S.D. Tex. May 20, 2021); *see Edgeworth,* 993 F.2d at 54; *see also Green v. Welsh,* 956 F.2d 30, 33 (2d. Cir. 1992) ("Numerous courts, confronted with a tort claimant who seeks to proceed against a discharged debtor only for the purpose of recovering against an insurer, have relied on §§ 524(a) and 524(e) and the fresh start policy in concluding that the discharge injunction does not bar such a suit."). In *Edgeworth,* the medical malpractice claimants were proceeding against the discharged debtor, Dr. Edgeworth, solely for the purpose of collecting insurance proceeds. *See Edgeworth,* 993 F.2d at 53 (1993). The Fifth Circuit held that the claimants were not precluded from suing Dr. Edgeworth because § 524(e) of the Bankruptcy Code excluded the malpractice insurance carrier from the protection of the doctor's bankruptcy discharge. *See Edgeworth,* 993 F.2d at 53.

"Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). The Fifth Circuit rationally applies the discharge to protect debtors, but not their third-party insurers. "[I]t makes no sense to allow an insurer to escape coverage for injuries caused by its insured merely because the insured receives a bankruptcy discharge. The "fresh-start" policy is not intended to provide a method by which an insurer can escape its obligations'" solely because of the insured's bankruptcy. *Edgeworth,* 993 F.2d at 54 (quoting *Jet Florida,* 883 F.2d 970, 975 (11th Cir. 1989)).

There is not a meaningful distinction between indemnity coverage where the indemnity chain runs through the discharged debtor and the insurance coverage in *Edgeworth.* It would be inequitable to allow an indemnitor, Urban, to escape coverage for liability incurred by its indemnitees, Blackbeard and Legacy, merely because Legacy, received a bankruptcy discharge. *See Edgeworth,* 993 F.2d at 54. The

fresh-start policy is not intended to provide a method by which Urban can escape its indemnity obligations simply based on Legacy's bankruptcy. *See Id.; In re Lembke,* 93 B.R. at 703. Fulfilling one's obligations is not the kind of concrete and actual injury envisioned by Article III. Under *Edgeworth,* Urban has suffered no injury in fact for the purposes of Article III standing.

## II.   CONTROVERSY

It is Urban's burden to persuade the Court that it has an actual controversy with Legacy so "as to assure that concrete adverseness . . . upon which the court so largely depends[,]" *Baker,* 369 U.S. at 204. Urban alleges a controversy among "the parties to this contested matter [who] have several disputes about the operation of the terms of the Plan[.]" ECF No. 659 at 16.

If there is a controversy, it is not with Legacy.

The outcome of this case will not have a conceivable effect on Legacy. If Urban's argument succeeds, then Marathon's initial demand for indemnity upon Legacy will be avoidable, and Legacy will be free from paying any money for indemnity or defense costs. If Urban's argument fails, then Legacy's own demand for indemnity upon Blackbeard will be held to be valid, and Legacy will be freed from paying any money for indemnity or defense costs. In other words, it's win-win for Legacy. Under both alternatives, Legacy pays nothing.

In their joinder, Legacy and Blackbeard note as much, stating: "Indemnity provisions among [Marathon], Legacy, Blackbeard, and Urban ultimately leave Urban the party with the most at stake regarding the issues raised in the Motion, as Urban is the last in the line in the indemnity chain among these four parties." ECF No. 658 at 1. Legacy has no skin in the game.

By virtue of Blackbeard and Legacy's joinder in part of Urban's motion, Legacy is apparently happy to let Urban fight this fight. *See* ECF No. 658 at 2. However, the joinder highlights the fact that Urban's

fight is against Marathon, with Legacy neither supporting nor opposing Urban.  *See* ECF No. 658 at 2 ("neither Blackbeard nor Legacy disputes that Urban has first-party standing to litigate the substantive issues raised in its Motion[.]").  Legacy is indifferent to Urban's success on the motion because there is no controversy between Urban and Legacy so "as to assure that concrete adverseness . . . upon which the court so largely depends[.]"  *Baker,* 369 U.S. 204.  The Court has serious questions as to whether it was appropriate for Legacy and Blackbeard to file a joinder in which it has no stake.  Urban has no actual controversy with Legacy for the purposes of Article III standing.

### III.   STANDING IS GRANTED BY THE CONSTITUTION

Blackbeard and Legacy argue in their joinder: "if the Court finds that Urban does not have the requisite standing, Blackbeard and Legacy each join the Motion solely to ensure that the Court may rule on the Motion's merits, rather than merely reaching issues of standing[,]" because "Blackbeard has standing[,]" and "Legacy is the reorganized debtor . . . [with] explicit statutory standing[.]"  ECF No. 658 at 3–4.

Parties may not grant standing to themselves or others. Constitutional standing is granted by the Constitution alone.  Contrary to Blackbeard and Legacy's arguments, Urban's lack of standing cannot be cured by the joinder.

### CONCLUSION

The Court finds Urban failed to meet its burden as the movant to demonstrate it suffered an injury in fact.  Moreover, Urban failed to demonstrate it has a controversy with Legacy.  Urban does not have the standing to bring its motion under Article III.  Without standing, this Court does not have jurisdiction to adjudicate Urban's motion.

A separate order will be issued.

Signed: October 13, 2023

_____
Marvin Isgur
United States Bankruptcy Judge